Mr. Chief Justice ShaRKey
delivered the opinion of the Court.
Dillingham as assignee instituted this action on a writing obligatory. The defendants pleaded 1st, nil debet; 2d, payment; 3d, a special plea, that the bill single was given for a leasehold interest, sold by the payee to the obligor, and also in consideration of a certain title bond given by the original lessors to Strong ; 4th, the last plea was substantially the same, both averring a failure of consideration. To the first, third, and fourth pleas, a demurrer was sus *657 tained, which is the first' error complained of. After the demurrer was sustained, the defendant pleaded non est factum, without an affidavit, and the plaintiff took issue. It was agreed that under this issue the defendant might give in evidence any special matter which would constitute a defence to the action if well pleaded. After this agreement, it cannot be necessary to decide the demurrer. It is either a waiver of all special pleading, or it is a good special plea reaching every defence. The object of a special plea is to open the door to the admission of evidence to defeat the action. This agreement performed that office as fully and effectually as a special plea or pleas could have done. The defendant therefore has been deprived of nothing. It is not the plea itself that constitutes the bar, but it is the evidence of its truth. He did introduce his evidence of the facts specially pleaded, and if it was error to sustain the demurrer, it was not an error to his prejudice.
• But it is argued, that the demurrer should have been extended to the declaration, because it does not aver that the assignment was made under seal, as it is said it should have been made to entitle the plaintiff to his action. We do not so understand the statute which makes bonds, bills single, promissory notes, &c. assignable by in-dorsement. We may proceed then to the merits of the motion for a new trial.
The first ground assigned in support of the motion for a new trial that we shall notice, is, that the Court improperly admitted the plaintiffs’ bill of discovery, and the answer of the defendant Montgomery, to go to the jury. The objection taken to this is, that the answer of Montgomery was. to operate against his co-defendant, Jenkins,, who was his surety. In chancery proceedings it is true, as a general rule, that the answer of one defendant is not evidence. against his co-defendants, though it is, like most general rules, subject to exceptions. It does not apply when they .are all partners in the same transaction, the partnership being otherwise proved. This rule 'applies when a liability is to grow out of the answer ; but where the joint liability is otherwise fixed, then there are many instances in which the answer of one defendant is evidence against another. This was a mere bill of discovery, in aid of a suit at law. The answer amounts to the confessions of *658 the defendant, and such confessions would have been equally good if they could have been otherwise proven. Wherever the confessions of one party would be good against another, his answer may be used for the same purpose. Van Reimsdyk v. Kane, 1 Gallison, 635. In the case of Martin v. Root, 17 Mass. Rep. 222, the written admission of one joint maker of a promissory note was held to be evidence against his co-defendant, although the objection to it was based upon that footing. There, as here, it was used as rebutting evidence to avoid the defence set up. This answer is but the written admission of Montgomery. The acknowledgment of a debt barred by limitations, by one of several debtors, takes the case out of the statute as to all. 3 Pick. 291. The case of the assignees of Simonton v. Boucher et al. 2 Wash. C. C. Rep. 473, was an action on a bond against principal and sureties, and it was held that the confessions of the principal were admissible as evidence. If the statements or admissions of one defendant are admissible against others, they must have the same effect against them all. The effect of Montgomery’s admission tended to destroy the defence set up, by showing encouragement given by him to induce the plaintiff to take an assignment of the writing obligatory. Jenkins, it is true, is a surety, and entitled to stand upon the strict terms of his contract, but there was no enlargement of the obligation, or change in the terms of the contract; nothing which increases his risk. And they are looked upon as joint contractors in law, and no reason is perceived which should place Jenkins in a better situation than an ordinary joint maker of note, and in such cases we have seen that the admissions of one are good against the others. The statute of limitations is a valid defence, and that may be swept away from all the contractors by the admissions of one, and the case cited from 2 Wash. C. C. R. 473, is the case of an admission made by a principal in a bond, held to be admissible against the surety. It is to be remarked, too, that the consideration does not pass to the surety. The obligation of the principal is the inducement to him. When the principal waives a defence, he thereby admits the validity of the consideration. For these reasons we think the answer was proper to go to the jury. But especially was it so as the defendants had not severed in pleading.
*659 It is also insisted that the verdict was contrary to law and evidence. Whatever ground of defence the defendant may have had, is entirely swept away by the answer to the bill of discovery. It seems that the plaintiff expressed some unwillingness to take an assignment of the writing obligatory, unless he could be assured that there would be no difficulty about it. To obviate his objections, Montgomery wrote him a letter, and thereby informed him that the note was good against him for the amount it called for, subject to certain credits which are indorsed on it,.and he expected to make satisfactory arrangements with the holder when the note became due. In the answer, he admits the authenticity of this letter, and that he was duly notified of tile transfer, with which he expressed himself satisfied, and asked further indulgence, and promised to apply the crop of 1841 in payment. But he says that all these assurances and promises were made under a belief that Taylor, the payee, had performed his contract, but he then believed he had not done so. The law arising on this state of facts was fully considered and settled in the case of Hamer v. Johnson, 5 Howard, 698, which is strictly an analagous case. It was there held that similar assurances amounted to a waiver of any special defence, even the de-fence of fraud, and that ignorance of the facts, at the time the assurance was given, did not excuse the maker of a note. He was held bound to make good his promises to the assignee. This being the case then, the defendant’s defence, even if it had been established, which is by no means clear, amounted to nothing, and the verdict was correct both on the law and the evidence.
It is also said that a new trial should have been granted, because the Court erred in the instructions to the jury. The Court charged the jury at the r'equest of plaintiff’s counsel, 1st. That the assignment of a bond conditioned to make title, the obligor having a good title to land, conveys an equitable right which would be a sufficient consideration for a note or bill single. 2d. That if the jury believed the trustees (the original vendors) had title and made the bond to Strong, through whose administrator, by intermediate assignments, it cam.e to the hands of the plaintiff, who assigned to the defendant, and also gave him possession, — this constitutes a sufficient consideration for the note sued on. Doubtless these charges were *660 correct. 3d. The third is, that if Montgomery was principal in the note, and induced the plaintiff to take an assignment by assurances that it was good and would be paid, he is estopped from setting up failure of consideration. This, too, was in accordance with law, as has been shown. ^4th. If after the bill single sued on became due, Montgomery requested the plaintiff not to sue in 1841, and promised, in consideration of such forbearance, that he would pay the note ; and if the plaintiff did forbear, such forbearance constitutes a good consideration between the plaintiffs and defendants, and they should find for the plaintiff. To this proposition we cannot assent; a mere voluntary promise to forbear, on a renewed assurance that the party will pay that which he is already-bound to pay, amounts to nothing. \ An agreement to forbear to sue on a new and independent consideration, might be sufficient to enable the party to recover that consideration ; but where there is no new consideration, such promise is a nude pact. In no possible shape could it strengthen the party’s right to recover on the bill single. If it constituted a good consideration, the plaintiff ought to have sued on that contract. It certainly was not the consideration of the bill single. It is difficult to see how this question could have been thought'of any importance ; but it was in evidence that a request of forbearance was made under a ■ promise that the crop of 1841 should be applied in payment, and it appeared also that the plaintiff did not sue. It is not for us' to say what influence it had on the jury. The plaintiff sought the charge, and he must abide by the consequences. It is sometimes dangerous to attempt to fortify at too many points.
The judgment must be reversed, and a new trial granted.